**FILED**
CLERK, U.S. DISTRICT COURT
2/10/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VAM___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>BLADE BAI,<br>　aka "Dabai,"<br>　aka "Balde Bai,"<br>　aka "Bai Tim," and<br>　aka "Tian Bai,"<br>BOWEN HU,<br>　aka "Hukeer,"<br>TAIRAN SHI, and<br>YAN FU,<br>　aka "Sharon,"<br><br>　　　　Defendants. | CR 20-621(B)-AB<br><br>S E C O N D<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 3147(1): Offense Committed While on Release; 18 U.S.C. § 982 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

　　　The Grand Jury charges:

                          COUNT ONE

                      [18 U.S.C. § 1956(h)]

                      [ALL DEFENDANTS]

A.　　INTRODUCTORY ALLEGATIONS

　　　1.　　At times relevant to this Second Superseding Indictment:

　　　　　　a.　　Defendant BLADE BAI, also known as "Dabai," "Balde Bai," "Bai Tim," and "Tian Bai," lived in El Monte, California (at

the "Bai Residence").  Defendant BAI operated Corporation A, a California corporation, which exported consumer electronics, including products made by Apple Inc.

   b. Defendant BOWEN HU, also known as "Hukeer," lived in Hacienda Heights, California (at the "Hu Residence").

   c. Defendant TAIRAN SHI lived in Diamond Bar, California (at the "Shi Residence").

   d. Defendant YAN FU, also known as "Sharon," lived in Chino Hills, California (at the "Fu Residence").

   e. Beginning no later than June 2019 and continuing until at least September 2019, defendant BAI and Corporation A operated out of a store in Temple City, California (the "Bai Store").

   f. Beginning no later than December 2019 and continuing until on or about November 17, 2020, defendant BAI and Corporation A operated from a warehouse in Baldwin Park, California (the "Bai Warehouse").

   g. Defendant BAI controlled an account with Google, and an associated email address ("Bai's Gmail").

   h. A "gift card" was a physical card or a payment code that was issued by a merchant in a particular amount in exchange for approximately equivalent value received.  Generally, upon presentation to such merchant, gift cards could be used to pay for purchases at the merchant.

   i. Target Corporation ("Target") was headquartered in Minnesota and operated brick-and-mortar retail stores within the Central District of California and elsewhere.  Target sold gift cards that could be used to pay for purchases from Target.  Target allowed possessors of gift cards to store the gift card data in an account

that could be accessed using a mobile device (a "Target account"), and to use the Target account to make purchases with the gift cards at its stores.

   j. When a party returned merchandise to Target that had previously been purchased from Target, Target often refunded the purchase price by issuing gift cards in an equivalent amount to the party.

   k. The "Magic Lamp" group was an association-in-fact of persons that sold Target gift card numbers over the electronic communication application, WeChat.

B. <u>THE OBJECT OF THE CONSPIRACY</u>

  2. Beginning no later than in or about June 2019 and continuing through on or about November 17, 2020, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants BAI, HU, SHI, and FU, knowingly conspired with one another and others known and unknown to the Grand Jury to commit an offense against the United States, namely, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and, while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

C.   THE MANNER AND MEANS OF THE CONSPIRACY

   3.   The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

      a.   Defendants BAI, HU, and SHI would obtain gift cards issued by Target, including over 5,000 gift cards obtained from the Magic Lamp group.

      b.   The gift cards frequently were originally purchased by victims who had been fraudulently induced by scammers, using interstate telephone communications to further their fraudulent schemes, to purchase the gift cards to resolve some nonexistent issue.  The fraudulent schemes included:

         i.   callers impersonating government personnel and falsely claiming that the victims had to pay money to resolve a legal problem including a purported problem with the victims' Social Security number; and

         ii.  scammers telling victims that there were problems with the victims' computers, such as hacking, and that victims had to pay money to have the problem fixed.

In furtherance of each of the fraudulent schemes, the scammers told the victims to buy gift cards issued by Target, and to read the numbers and access codes assigned to the gift cards over the phone to the scammers for the purported purpose of paying to fix the claimed issues.

      c.   Defendants BAI, HU, and SHI, and other known and unknown co-conspirators, and persons working at their direction, would distribute and cause the distribution of such gift cards to persons ("runners") including defendant FU who, at the direction of defendants BAI, HU, and SHI, other co-conspirators, and persons

4

working at their direction, would use the funds associated with the gift cards at Target stores, in Los Angeles and Orange Counties and elsewhere, to purchase, among other items, consumer electronics and other gift cards.

        d. Through the purchases, returns, and other transactions at multiple Target stores, defendants BAI, HU, SHI, and FU, and their co-conspirators, would knowingly seek to conceal and disguise, and would knowingly conceal and disguise, the fact that the gift cards had been funded in the first instance with fraud proceeds. Furthermore, defendants BAI, HU, SHI, and FU, and their co-conspirators, would knowingly seek to conceal and disguise, and would knowingly conceal and disguise, the nature and location of such fraud proceeds in the consumer electronics and other merchandise.

        e. Defendants BAI, HU, and SHI would cause the consumer electronics and other items ultimately purchased with the gift cards by runners, including defendant FU, to be taken into defendant BAI's possession at the Bai Store, the Bai Warehouse, and the Bai Residence. Defendant BAI would resell the items and use at least some of the proceeds to pay the Magic Lamp group.

D. <u>OVERT ACTS</u>

    4. In furtherance of the conspiracy, and to accomplish its object, defendants BAI, HU, SHI, and FU, together with others known and unknown to the Grand Jury, on or about the following dates, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

    <u>Overt Act No. 1</u>: On July 23, 2019, defendant BAI possessed a Target gift card number ending in 001 (the "001 Card"). The 001 Card

was funded via a digital transfer of value from a Target gift card number ending in 119 (the "119 Card").  In turn, the 119 Card had been purchased by a fraud victim in Brunswick, Georgia, earlier that same day.

<u>Overt Act No. 2</u>:   On July 23, 2019, defendant FU used the 001 Card to purchase two consumer electronics items at a Target store in Orange, California.

<u>Overt Act No. 3</u>:   On February 13, 2020, defendants BAI, HU, and SHI obtained access information for Target gift card numbers ending in 026 (the "026 Card") and 229 (the "229 Card"), each of which had a value of $500, from a member of the Magic Lamp group. The 026 and 229 Cards had been purchased by a fraud victim in Fresno, California, earlier that same day.

<u>Overt Act No. 4</u>:   On February 13, 2020, defendant HU sent the access information for the 026 and 229 Cards to defendant FU.

<u>Overt Act No. 5</u>:   On February 13, 2020, defendant FU used the 026 Card to purchase an Apple watch at a Target store in La Habra, California.

<u>Overt Act No. 6</u>:   On February 13, 2020, defendant FU used the 229 Card to purchase Target gift cards, hash browns, and cheese wedges at a Target store in Brea, California.

<u>Overt Act No. 7</u>:   On June 10, 2020, defendant BAI responded to a request from a member of the Magic Lamp group, in Chinese, to "settle [defendant HU's] group accounts," stating, in Chinese, "just received funds; I'll send it over once I'm done counting."

<u>Overt Act No. 8</u>:   On June 15, 2020, defendants BAI, HU, and SHI obtained access information for Target gift card numbers ending in 960 (the "960 Card") and 620 (the "620 Card"), each of which had a

value of $500, from a member of the Magic Lamp group. The 960 and 620 Cards had been purchased by a fraud victim in Schaumburg, Illinois, earlier that same day.

Overt Act No. 9: On June 15, 2020, defendant HU sent the access information for the 960 and 620 Cards to defendant FU.

Overt Act No. 10: On June 15, 2020, defendant FU used the 960 and 620 Cards to purchase an Apple tablet at a Target store in Chino, California.

Overt Act No. 11: On June 15, 2020, defendant SHI sent a payment of $554 to defendant FU.

Overt Act No. 12: On August 10, 2020, defendants BAI, HU, and SHI obtained access information for Target gift card numbers ending in 478 (the "478 Card") and 486 (the "486 Card"), each of which had a value of $500, from a member of the Magic Lamp group. The 478 and 486 Cards had been purchased by a fraud victim in El Paso, Texas, earlier that same day.

Overt Act No. 13: On August 10, 2020, defendant HU sent the access information for the 478 and 486 Cards to defendant FU.

Overt Act No. 14: On August 10, 2020, defendant FU used the 486 Card to purchase an Apple iPad at a Target store in Anaheim, California.

Overt Act No. 15: On August 10, 2020, defendant FU used the 478 Card to purchase an Apple watch at a Target store in Orange, California.

Overt Act No. 16: On October 28, 2020, defendants HU and SHI drove to the Fu Residence. After loading merchandise into his vehicle at the Fu Residence, defendant HU drove his vehicle to the Hu Residence.

<u>Overt Act No. 17</u>:  On October 30, 2020, defendant BAI caused a person working for him to drive to the Hu Residence.  After loading merchandise into his vehicle at the Hu Residence, the person drove his vehicle to, and unloaded the merchandise in it at, the Bai Warehouse.

<u>Overt Act No. 18</u>:  On November 13, 2020, after defendants BAI, HU, and SHI received from a member of the Magic Lamp group an invoice and payment instructions for sending 90,000 Chinese yuan for Target gift cards, defendant BAI sent to defendants HU and SHI two images showing payment of the invoice.

<u>Overt Act No. 19</u>:  On November 13, 2020, after receiving from defendant BAI the two images referenced in Overt Act 18, defendant SHI sent the two images to members of the Magic Lamp group.

## COUNT TWO

[18 U.S.C. §§ 1956(h) and 3147]

[DEFENDANT BAI]

5. The Grand Jury realleges paragraphs 1, 3, and 4 of this Second Superseding Indictment here.

A.  INTRODUCTORY ALLEGATIONS

6. At times relevant to this Second Superseding Indictment:

   a. Defendant BAI was arrested on or about November 17, 2020 based on a complaint for a violation of Title 18, United States Code, Section 1956(h) (Conspiracy to Commit Money Laundering) in case number 20-MJ-005589. On or about the same day, defendant BAI was released on conditions pursuant to Title 18, United States Code, Section 3142, and an order issued by the United States District Court for the Central District of California.

   b. Co-conspirators CC-1 and CC-2 were associates of defendant BAI who operated a warehouse in La Puente, California.

   c. Customer-1 was a purchaser of merchandise from defendant BAI. Customer-1 operated a warehouse in Commerce, California.

B.  THE OBJECT OF THE CONSPIRACY

7. Beginning on or about November 17, 2020, and continuing through at least on or about December 1, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant BAI knowingly conspired with CC-1, CC-2, and others known and unknown to the Grand Jury to commit an offense against the United States, namely, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity,

9

that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h), knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and, while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

C.  OVERT ACTS

8.  In furtherance of the conspiracy, and to accomplish its object, defendant BAI, together with others known and unknown to the Grand Jury, on or about the following dates, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:  On November 21, 2020, defendant BAI gave to CC-1 contact information for Customer-1.

Overt Act No. 2:  On November 24, 2020, defendant BAI told CC-1 that defendant BAI had $20,000 to $30,000 worth of gift cards and asked CC-1 to sell the cards to Customer-1 for defendant BAI.

Overt Act No. 3:  On November 27, 2020, defendant BAI asked CC-1 whether CC-1 had asked about the gift cards and told CC-1 that he (defendant BAI) had approximately $30,000 to $40,000 worth.

Overt Act No. 4:  On November 27, 2020, CC-2 contacted Customer-1 about Target gift cards, confirming that the cards were physical cards, and Customer-1 offered to pay 90 percent of the value of the gift cards.

<u>Overt Act No. 5</u>:   On November 27, 2020, defendant BAI received from CC-1 the price that Customer-1 was offering to pay for the Target gift cards.

<u>Overt Act No. 6</u>:   On November 30, 2020, defendant BAI told CC-1 that defendant BAI had $36,300 worth of gift cards and would accept $32,000 from CC-1 for them.

<u>Overt Act No. 7</u>:   On November 30, 2020, defendant BAI transferred to CC-1 the approximately $36,000 worth of gift cards that he had discussed with CC-1.

<u>Overt Act No. 8</u>:   On December 1, 2020, CC-2 confirmed to Customer-1 that CC-2 would bring Target gift cards to Customer-1 that day.

D.   <u>OFFENSE COMMITTED WHILE ON RELEASE</u>

9.   It is further alleged that at the time of this offense, defendant BAI was released under Title 18, United States Code, Chapter 207, in the criminal case of <u>United States v. Blade Bai</u>, case no. 20-MJ-005589 and CR 2:20-00621-AB.

FORFEITURE ALLEGATION

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

10. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of any offense set forth in this Second Superseding Indictment.

11. Any defendant so convicted shall forfeit to the United States of America the following:

    a. Any property, real or personal, involved in such offense, and any property traceable to such property, including, without limitation, the following property seized on or about November 17, 2020;

        i. Gift cards, United States Currency, and new electronics merchandise, including Apple pencils, Apple iPhones, Apple Airpods, Apple keyboards, Bose Headphones, Apple watches, Apple iPads, Apple TV devices, Xbox consoles, Sony Playstation consoles and games, Nintendo Switch devices and games, Nest cameras, and streaming devices, seized from 4616 N. Peck Rd., Unit C, El Monte, California and from 13300 Brooks Dr., Suite D, Baldwin Park, California;

        ii. New electronics merchandise, including Apple iPads, Apple watches, Apple Airpods, Nintendo Switches, and streaming devices, seized from 5095 Buckwheat St., Chino Hills, California;

        iii. New electronics merchandise, including Apple Airpods and cables, and United States Currency, seized from 16327 Sierra Trail Ct., Hacienda Heights, California; and

b.  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

12.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be ordered, however, where the defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense giving rise to the forfeiture, conducted three or more

//

//

//

13

separate transactions involving a total of $100,000 or more in any twelve-month period.

                                                A TRUE BILL

                                                /S/
                                             Foreperson

TRACY L. WILKISON  
United States Attorney

SCOTT M. GARRINGER  
Assistant United States Attorney  
Chief, Criminal Division

RANEE A. KATZENSTEIN  
Assistant United States Attorney  
Chief, Major Frauds Section

MONICA E. TAIT  
Assistant United States Attorney  
Deputy Chief, Major Frauds Section

GUSTAV W. EYLER  
Director, Consumer Protection Branch  
United States Department of Justice

WEI XIANG  
Trial Attorney  
Consumer Protection Branch  
United States Department of Justice