E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MONICA E. TAIT (Cal. Bar No. 157311)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2931
     Facsimile:  (213) 894-6269
     E-mail:    Monica.Tait@usdoj.gov
AMANDA N. LISKAMM
Director, Consumer Protection Branch
WEI XIANG
MEREDITH B. HEALY
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
     450 Fifth Street, NW, Suite 6400
     Washington, DC 20001
     Telephone: (202) 532-4140
     Facsimile: (202) 514-8742
     E-mail:  Wei.Xiang@usdoj.gov
              Meredith.B.Healy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>BLADE BAI,<br>BOWEN HU, and<br>TAIRAN SHI,<br><br>          Defendants. | No. 20-CR-00621-AB<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date: September 12, 2023<br>Time: 8:30 a.m.<br>Place: Courtroom 7B<br>Before the Honorable André<br>Birotte, Jr., United States<br>District Judge |

Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Monica E. Tait, and

the Department of Justice, Consumer Protection Branch and Trial Attorneys Wei Xiang and Meredith B. Healy, hereby submits its Trial Memorandum.

The government respectfully requests leave to file additional memoranda as may become appropriate during the course of trial.

Dated: September 5, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

AMANDA N. LISKAMM
Director, Consumer Protection Branch

MEREDITH B. HEALY
WEI XIANG
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice

/s/ Monica E. Tait
_____
MONICA E. TAIT
Assistant United States Attorney
Major Frauds Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES..............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.   INTRODUCTION AND CASE STATUS..................................1

II.  INDICTMENT AND ELEMENTS......................................1

III. STATEMENT OF FACTS..........................................3

IV.  MOTIONS IN LIMINE...........................................6

V.   LEGAL AND EVIDENTIARY ISSUES................................6

     A.   Hearsay and Exceptions.................................6

          1.   Defendants' statements............................6

               a.   Defendants' Statements, Offered by the
                    Government...................................6

               b.   Defendants Cannot Admit Their Own Statements....7

     B.   Foreign Language Translations..........................8

     C.   Authentication and Foundation..........................8

     D.   Chain of Custody.......................................8

     E.   Business Records.......................................9

     F.   Expert Witnesses......................................10

     G.   Charts and Summaries of Voluminous Records............10

     H.   Summary Witness Testimony.............................11

     I.   Cross Examination of Defendants and Defense Witnesses....13

     J.   Defense Witnesses.....................................13

     K.   Character Evidence....................................14

     L.   Jury Nullification....................................14

     M.   Reciprocal Discovery..................................15

     N.   Affirmative Defenses..................................16

# TABLE OF AUTHORITIES

**CASES:**                                                          **PAGE(S)**

Gallego v. United States,
   276 F.2d 914 (9th Cir. 1960)........................................ 8

Goldberg v. United States,
   789 F.2d 1341 (1986)..............................................12

Michelson v. United States,
   335 U.S. 469 (1948) ..............................................14

Ohio v. Roberts,
   448 U.S. 56 (1980) ............................................... 9

United States v. Baker,
   855 F.2d 1353 (8th Cir. 1988) .................................... 9

United States v. Black,
   767 F.2d 1334 (9th Cir. 1985) .................................... 8

United States v. Burreson,
   643 F.2d 1344 (9th Cir. 1981) .................................... 7

United States v. Chu Kong Yin,
   935 F.2d 990 (9th Cir. 1991)...................................... 8

United States v. Collicott,
   92 F.3d 973 (9th Cir. 1996) ...................................... 7

United States v. Crosgrove,
   637 F.3d 646 (6th Cir. 2011) ..................................... 7

United States v. Harrington,
   923 F.2d 1371 (9th Cir. 1991) .................................... 8

United States v. Lemire,
   720 F.2d 1327 (D.C. Cir. 1983) ..................................12

United States v. Marin,
   669 F.2d 73 (2d Cir. 1982) ....................................... 7

United States v. McCollom,
   664 F.2d 56 (5th Cir. 1981) .....................................14

United States v. Meyers,
   847 F.2d 1408 (9th Cir. 1988) ...................................11

ii

# TABLE OF AUTHORITIES (CONTINUED)

**CASES:**                                                                 **PAGE(S)**

United States v. Miranda-Uriarte,
   649 F.2d 1345 (9th Cir. 1981) ................................. 13

United States v. Norton,
   867 F.2d 1354 (11th Cir. 1989) ................................. 9

United States v. Ortega,
   203 F.3d 675 (9th Cir. 2000) ................................... 7

United States v. Patterson,
   820 F.2d 1524 (9th Cir. 1987) .................................. 2

United States v. Powell,
   955 F.2d 1206 (9th Cir. 1992) ................................. 15

United States v. Ray,
   930 F.2d 1368 (9th Cir. 1990) .................................. 9

United States v. Scholl,
   166 F.3d 964 (9th Cir. 1999) ................................... 9

United States v. Shirley,
   884 F.2d 1130 (9th Cir. 1989) ................................. 11

United States v. Vallejos,
   742 F.3d 902 (9th Cir. 2014) ................................... 7

Zal v. Steppe,
   968 F.2d 924 (9th Cir. 1992) .................................. 15

**STATUTES:**

18 U.S.C. § 1956(a)(1)(B) ......................................... 1

18 U.S.C. § 1956(h) ............................................ 1, 2

18 U.S.C. § 3147(1) ............................................... 2

28 U.S.C. § 2461(c) ............................................... 3

**RULES:**

Fed. R. Crim. P. 16 .............................................. 12

Fed. R. Evid. 106 ................................................. 7

iii

**TABLE OF AUTHORITIES (CONTINUED)**

**RULES:**                                                                    **PAGE(S)**

Fed. R. Evid. 405(a)...............................................14

Fed. R. Evid. 801(c)...............................................6

Fed. R. Evid. 801(d)...............................................7

Fed. R. Evid. 801(d)(2)............................................7

Fed. R. Evid. 801(d)(2)(A).........................................6

Fed. R. Evid. 803(6)...............................................9

Fed. R. Evid. 1006.................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND CASE STATUS

Defendants BLADE BAI ("BAI"), BOWEN HU ("HU"), and TAIRAN SHI ("SHI") (collectively, "defendants") will appear for a jury trial beginning September 12, 2023 on money laundering conspiracy charges. The estimated time for the government's case-in-chief is six days. Defendant BAI is in custody, and defendants HU and SHI are released on bond.  The fourth charged defendant, Yan Fu ("Fu"), has already been convicted on her guilty plea, and sentenced.

### II.   INDICTMENT AND ELEMENTS

The case is proceeding to trial on the Second Superseding Indictment ("Indictment").  Count One charges defendants BAI, HU, and SHI with participating in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h) in which they purchased fraudulently-obtained Target gift cards and funneled them to runners to liquidate.  (CR 136 at 1-8.)  The elements of this violation are: (1) beginning in or about June 2019, and ending on or about November 17, 2020, there was an agreement to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B); (2) the defendant knew the objective of the agreement; and (3) the defendant joined the agreement with the intent to further its unlawful purpose.  The elements of concealment money laundering as it relates to Count One are the following: (1) the person conducted a financial transaction involving property that represented the proceeds of wire fraud, in violation of Section 1343 of Title 18 of the United States Code; (2) the person knew that the property represented the proceeds of some form of unlawful activity; and (3) the person knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source,

ownership, or control of the proceeds.  A "financial transaction" is a transaction involving the movement of funds by wire or other means that affects interstate or foreign commerce in any way.  The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony.  And wire fraud occurs when someone devises a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses, representations, or promises, and interstate or foreign wire communications are used to carry out an essential part of the scheme.

Count Two charges defendant BAI alone in a later, related, money laundering conspiracy in violation of 18 U.S.C. § 1956(h), for selling laundered gift cards after his initial arrest in this case along with two uncharged co-conspirators.  (CR 136 at 9-11.)  In addition, Count Two charges that defendant BAI committed this second offense while he was released on conditions, pursuant to Title 18, United States Code, Section 3142, imposed in case number 20-MJ-005589 (the case number for the criminal complaint in this matter pursuant to which defendant BAI was originally arrested).  Because the government has charged the sentencing enhancement provision of 18 U.S.C. § 3147(1)(penalty for an offense committed while on release), if convicted on Count Two, the Court must sentence defendant BAI to an additional consecutive term of imprisonment of up to 10 years.  See United States v. Patterson, 820 F.2d 1524, 1526 (9th Cir. 1987) (Section 3147 does not create a separate offense, but is "a sentence

1   enhancement statute which simply mandates an enhanced sentence for

2   someone who commits an offense while released on bail.").

3       The Indictment also notified the defendants that the government

4   seeks forfeiture if any defendant is convicted of Count One or Count

5   Two, including forfeiture of specific property.  See 18 U.S.C.

6   § 982 and 28 U.S.C. § 2461(c).  A forfeiture phase would occur only

7   after a defendant was convicted.  Based on discussions with defense

8   counsel, the government expects that a stipulation will be entered

9   for the Court rather than the jury to adjudge forfeiture.

10  **III. STATEMENT OF FACTS**

11      This case concerns the laundering of the proceeds of scams that

12  targeted older adults and other consumer victims throughout the

13  United States.  Here, those proceeds were contained on gift cards

14  issued by the retail store, Target.

15      Unknown overseas telephone-based scammers lied to victims to

16  persuade them to buy one or more Target gift cards to fix non-

17  existent problems.  For example, some victims received calls from

18  fraudsters posing as law enforcement officers or government

19  employees, who claimed the victims' identities had been stolen,

20  warrants had been issued for the victims' arrest, and that, the

21  victims' money needed to be secured in the form of Target gift cards

22  to remedy the problems.  Other victims were tricked into responding

23  to an email, that appeared to be, but was not, from a company like

24  Amazon, for example.  The emails claimed that there was a serious

25  problem relating to the victims' financial accounts that could only

26  be resolved by paying money in the form of Target gift cards.

27  Through the scammers' lies, the victims were convinced to buy Target

28  gift cards, oftentimes more than one and usually in increments of

3

$500, and to read the card numbers and access codes over the phone to the scam artists.

Several victims of these kinds of scams are expected to testify at trial.  As charged in Count One, those victims' Target gift card numbers and access codes, and thousands of others, ended up in the possession of a group of unknown persons in China who called themselves the "Magic Lamp" Group.  The government will prove using evidence seized from the defendants' own mobile phones that members of the Magic Lamp transmitted to some or all the defendants the card numbers and access codes for thousands of Target gift cards, including those of the testifying victims, over the electronic communication application, WeChat.

One or more of the defendants, in turn, would transmit the card numbers and access codes to runners, like convicted defendant Fu, who would -- sometimes within minutes of a victim's out-of-state purchase of gift cards -- physically walk into Target stores in Southern California, purchase merchandise (usually Apple products) with those gift cards, or purchase new gift cards (which further distanced the proceeds from the original victim's card numbers), and leave. Sometimes, the defendants and runners used the gift cards to purchase items for the purpose of returning the same items and transferring those items' return value onto new gift cards.  Other times, runners used the fraudulently-obtained gift cards to purchase low-value items, such as hash browns and cheese wedges, along with a new gift card, for the purpose of securing a new physical gift card.  After buying merchandise and getting clean gift cards, runners like Fu would tender them to one or more of the defendants in exchange for a fee.

Testimony from a witness from Target is expected to explain that the company receives complaints from victims who have been tricked by scammers into buying gift cards, and that if the gift card has not yet been fully redeemed, the company can sometimes freeze the card number to halt further use of the card. Thus, the defendants and their runners were told to use the cards fast; some cards were transmitted with instructions, like "two hour card" or "20 minute" card. As defendant BAI instructed defendants HU and SHI in the early days of their conspiracy, clearing the value off their gift cards (that is, the victim-purchased cards) was paramount, notwithstanding the expense of the sham transactions they conducted to do so.

It was through various purchases, returns, and other transactions across multiple Target stores, that defendants BAI, HU, and SHI knowingly sought to conceal and disguise the fact that the Target gift cards had been funded in the first instance with criminal proceeds. Despite arrests and property seizures relating to their and other runners, the defendants doubled down on ways to avoid the police, continuing their Count One conspiracy until the federal takedown operation in this case.

On November 17, 2020, defendant BAI alone was arrested on a criminal complaint for money laundering conspiracy. He was released the same day, on conditions, including that he not commit further crimes. The evidence on Count Two will show that defendant BAI then engaged in a second money laundering conspiracy, focused on laundering physical gift cards that were the result of runner returns described above. After his release, defendant BAI offered to introduce an associate ("CC-1") to someone who bought merchandise from defendant BAI, and thereafter asked CC-1 to help defendant BAI

5

1    liquidate around $36,000 of physical Target gift cards.  With

2    defendant BAI unwilling to be paid directly for the sale, CC-1 and

3    CC-2 together arranged a deal in which they sold, to the customer,

4    defendant BAI's physical gift cards for about 90 cents on the dollar.

5    Evidence from Target and a testifying victim will show that at least

6    one of the gift card numbers CC-1 and CC-2 were offering to defendant

7    BAI's customer was a dirty card:  the victim had purchased gift cards

8    as a result of a scam; the victim's gift cards were used at a Target

9    to purchase electronics; the electronics were returned; and the value

10   of the return was transferred to one of defendant BAI's gift card

11   numbers.

## IV.  MOTIONS IN LIMINE

13        The government filed five motions in limine, and will not repeat

14   its arguments here concerning the contents.

## V.   LEGAL AND EVIDENTIARY ISSUES

### A.    Hearsay and Exceptions

17        Federal Rule of Evidence 801(c) defines "hearsay" as "a

18   statement, other than one made by the declarant while testifying at

19   the trial or hearing, offered in evidence to prove the truth of the

20   matter asserted."  Fed. R. Evid. 801(c).

              1.    Defendants' statements

                    a.    *Defendants' Statements, Offered by the Government*

23        The government intends to admit statements made by the

24   defendants.  Statements by a party opponent when offered against that

25   party are excluded from the hearsay definition.  Fed. R. Evid.

26   801(d)(2)(A).

6

1              *b.  Defendants Cannot Admit Their Own Statements*

2       When the government offers some of a defendant's prior

3  statements, the door is not thereby opened to the defendant to

4  introduce all of his out-of-court statements because, when offered by

5  the defendant, the statements are hearsay.  See Fed. R. Evid.

6  801(d)(2); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir.

7  1981).  Accordingly, exculpatory statements made by a defendant are

8  hearsay and are not admissible at trial, when offered by the

9  defendant.  See Fed. R. Evid. 801(d), 802; United States v. Ortega,

10  203 F.3d 675, 682 (9th Cir. 2000).

11      The only recognized limitation of this principle is the "rule of

12  completeness," which has been applied by some courts to admit

13  additional portions of a defendant's prior statements where necessary

14  to explain an admitted statement, place it in context, or avoid

15  misleading the trier of fact.  See Fed. R. Evid. 106; Burreson, 643

16  F.2d at 1349; United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).

17  It is proper to admit segments of a conversation without including

18  the entire conversation, and adverse parties are not entitled to

19  offer additional statements just because they exist and the proponent

20  has not offered them.  See United States v. Collicott, 92 F.3d 973,

21  983 (9th Cir. 1996).  The completeness doctrine does not require

22  introduction of portions of a statement that are neither explanatory

23  of, nor relevant to, the admitted passages.  United States v.

24  Vallejos, 742 F.3d 902, 905 (9th Cir. 2014).  Indeed, if the

25  statements offered by the defendant do not clarify a misleading

26  impression, the district court should exclude them.  See Vallejos,

27  742 F.3d at 905; see also United States v. Crosgrove, 637 F.3d 646,

28  661 (6th Cir. 2011) (finding that defendant could not introduce text

                                7

messages under Rule 106 because messages were too far removed in time to correct any misleading impression).

### B. Foreign Language Translations

A substantial portion of the evidence at trial will be translations of text and audio messages in Mandarin Chinese, seized from the defendants' and others' mobile phones.

### C. Authentication and Foundation

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Under Rule 901(a), evidence should be admitted, despite any challenge, once the government makes a *prima facie* showing of authenticity or identification so "that a reasonable juror could find in favor of authenticity or identification . . . [because] the probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (citations and internal quotation marks omitted); see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

### D. Chain of Custody

The government need not establish all links in the chain of custody of an item or call all persons who were in a position to come into contact with it. See Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960). Alleged gaps in the chain of custody go to the weight of the evidence rather than to its admissibility. United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).

### E.   Business Records

The government will seek to admit records obtained from Target Corporation, JPMorgan Chase Bank, Bank of America, and Google LLC. These business records fall under the exception to the hearsay rule for records of regularly conducted activity.  Fed. R. Evid. 803(6). "[A] business record is admissible when (1) it is made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) in the ordinary course of business; and (3) is trustworthy, with neither the source of information nor method or circumstances of preparation indicating a lack of trustworthiness."

Challenges to the accuracy or completeness of business records ordinarily go to the weight of the evidence and not its admissibility.  See United States v. Scholl, 166 F.3d 964, 978-79 (9th Cir. 1999), as amended on denial of reh'g (Mar. 17, 1999). Because Rule 803(6) represents a firmly rooted hearsay exception, if non-testimonial evidence meets the requirements for admission under the Rule, no further showing of reliability is necessary for admission under the Confrontation Clause.  See Ohio v. Roberts, 448 U.S. 56, 66 n.8 (1980), overruled on other grounds by Crawford v. Washington, 541 U.S. 36 (2004); United States v. Ray, 930 F.2d 1368, 1371 (9th Cir. 1990); United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989); United States v. Baker, 855 F.2d 1353, 1360 (8th Cir. 1988).

Certified records of regularly conducted activity are self-authenticating when accompanied by a written certification satisfying the requirements of Rule 902(11).  The government has obtained and produced Rule 902(11) certifications for the aforementioned business

1    records (except as to certain Target records, to which a witness is

2    expected to provide live testimony).  The government produced all the

3    underlying documents and certifications in discovery and provided

4    defendants with written notice of its intention to move to admit

5    these documents under the relevant rules.  No defendant has indicated

6    any challenge to the certifications, nor to the admissibility of the

7    underlying business records under Rule 803(6).

8         **F.   Expert Witnesses**

9         The government has provided notice that it intends to introduce

10   expert testimony in the form of translations from Mandarin Chinese to

11   English of written and audio communications contained within messages

12   seized from numerous mobile phones.

13        Although the government also provided notice that it intended to

14   introduce expert testimony from Joseph A. Monroe, a computer

15   forensics experts, concerning the use of Cellebrite software in

16   general and the fact that the software is sometimes able to extract

17   from a phone data that the phone user attempted to delete, the

18   government no longer intends to do so, for the reasons stated in its

19   Notice That It Will Not Introduce Evidence of Deleted Messages At

20   Trial Of Count Two, And Request For Ruling On MIL #4 (Dkt. 260).

21        **G.   Charts and Summaries of Voluminous Records**

22        Rule 1006 provides that:

23        The proponent may use a summary, chart, or calculation to
          prove the content of voluminous writings, recordings, or
24        photographs that cannot be conveniently examined in court.
          The proponent must make the originals or duplicates
25        available for examination or copying, or both, by other
          parties at a reasonable time and place.  And the court may
26        order the proponent to produce them in court.

27   Fed. R. Evid. 1006.  The advisory committee notes to Rule 1006 add

28   that "the admission of summaries of voluminous books, records, or

documents offers the only practicable means of making their contents available to judge and jury.  The rule recognizes this practice, with appropriate safeguards."

A chart or summary may be admitted as evidence where the proponent establishes that the underlying documents are voluminous, admissible, and available for inspection.  United States v. Meyers, 847 F.2d 1408 (9th Cir. 1988).  While the underlying documents must be "admissible," they need not be "admitted."  Meyers, 847 F.2d at 1411-1412.  Permitting summary charts and summary witness testimony is also consistent with Rule 611(a), which instructs the court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to [¶] make those procedures effective for determining the truth, [and] [¶] avoid wasting time."

The government intends to seek to admit one or more graphs summarizing, over time, the volume and regularity of gift cards that the defendants laundered.  The government has already turned over the source documents for these charts in discovery, as well as an explanation of how the gift card numbers were counted from the Magic Lamp's and the defendants' message threads.

In addition, the government has created composite charts displaying photographs of defendants' and Fu's phone screens, to show the flow of messages from one conspirator to another.

**H.   Summary Witness Testimony**

A summary witness may properly testify about, and use a chart to summarize, evidence that has already been admitted.  The court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed."  United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony

regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate evidence; summary charts properly admitted); United States v. Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983).

Here, the government anticipates calling two case agents as summary witnesses. Special Agent ("SA") Christopher Cutaia, Homeland Security Investigations, was the lead investigator in this matter, and is both a percipient witness (to certain surveillance and seizures) as well as a summary witness. In addition, for a large portion of his testimony, SA Cutaia will summarize voluminous admissible evidence of the defendants' communications throughout the Count One conspiracy's duration, and will tie those communications to other admitted evidence, such as the testimony of victims who purchased gift cards the numbers for which appear in the defendants' communications. SA Bradley Pesek, Federal Bureau of Investigation, is expected to testify regarding the acquisition of the phones of defendant BAI's Count Two co-conspirator (CC-1), and to summarize and tie together the messages relating to Count Two that were recovered from CC-1's multiple phones and one of CC-2's phones. The government also anticipates calling an FBI accountant, Amy French, to testify to summary charts of the Count One gift card counts as described above.

A summary witness who organizes the admissible evidence to assist the jury is not an expert witness. See Goldberg v. United States, 789 F.2d 1341, 1343 (1986) (testimony from experienced revenue agent who testified summarizing voluminous tax records but offered no opinions or conclusions about those records was not expert testimony); see also Fed. R. Crim. P. 16 advisory committee's note to

1993 amendment (expert disclosures required under Rule 16 do not
"extend to summary witnesses who may testify under Federal Rule of
Evidence 1006 unless the witness is called to offer expert opinions
apart from, or in addition to, the summary evidence").

### I.   Cross Examination of Defendants and Defense Witnesses

A defendant who testifies at trial may be cross-examined as to
all matters reasonably related to the issues he puts in dispute
during direct examination.  "A defendant has no right to avoid cross-
examination on matters which call into question his claim of
innocence."  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54
(9th Cir. 1981).

If one or more of the defendants chooses to testify to refute
the government's showing of knowledge and intent, the issue of his or
their credibility will be critical.  Indeed, because the defendants
are the only witnesses with "direct" evidence of their own knowledge
and intent, if one or more of the defendants takes the stand to deny
any knowledge of the fraud, his or their credibility becomes a key
issue.

Moreover, the government is not required to provide notice of
matters about which it may seek to cross-examine defense witnesses,
including the defendants, should they testify.  Nevertheless, the
government has provided notice of at least one matter, as discussed
in Motion in Limine #3 (Dkt. 232).

### J.   Defense Witnesses

The defendants have not disclosed whether they plan to present a
defense case with any witnesses.

13

**K.   Character Evidence**

To the extent that the defendants seek to call character witnesses, such evidence may be excluded.  The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to confuse the issues and prejudice the jury.  See Michelson v. United States, 335 U.S. 469, 480 (1948).  The Court thus has wide discretion to limit the presentation of character evidence.   Id.

In addition, the form of the proffered evidence must be proper.  Rule 405(a) sets forth the sole methods for which character evidence may be introduced: testimony as to reputation, or opinion.  A defendant may not introduce specific instances of his good conduct through the testimony of others.  See Michelson, 335 U.S. at 477.  On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue.  See Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes and wrongful acts.  See Michelson, 335 U.S. at 481.  The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue.  See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

**L.   Jury Nullification**

The Court should exclude any evidence and/or argument relating to or concerning any possible jury nullification defense.  This includes any evidence and/or argument meant to play on the jury's sympathy for a defendant.

14

It is well established that a defendant does not have a right to a jury nullification instruction. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992). Having no right to seek jury nullification, a defendant has no right to present evidence relevant only to such a defense. Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged. Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant." (emphases in original)).

Since they do not make any fact in issue more or less probable, evidence and arguments meant to play on the jury's sympathy are not relevant under Federal Rule of Evidence 401 and must be excluded on that basis. In addition, appeals to sympathy are unduly prejudicial and confusing to the jury and misleading under Rule 403 and, therefore, properly excluded on that basis even if they had some arguable relevance.

### M.   Reciprocal Discovery

The United States has requested reciprocal discovery, Jencks material, and expert disclosures from the defendants. To date, the government has not received any reciprocal discovery, including any planned exhibits or witness statements from any witnesses that the defendants intend to call at trial. To the extent the defendants may attempt to introduce or use any documents at trial that they were obligated to, but did not produce, the United States reserves the right to object and to seek to have such documents precluded.

15

### N.    Affirmative Defenses

No defendant has given notice of any affirmative defenses or an intent to rely on any affirmative defense, including mental incapacity, entrapment, duress, or an alibi defense, in response to the government's requests for such notice.  Therefore, to the extent one or more of the defendants attempts to rely on such a defense, the government reserves the right to object and to move to preclude that defendant from asserting such a defense.