Janet E. Hong (SBN 243607)
THE HONG FIRM
A Professional Law Corporation
100 Oceangate, Suite 1200
Long Beach, California 90802
(562) 276-2340
janet@thehongfirm.com

Jennifer Ng (SBN 266519)
3016 E Colorado Blvd # 70111
Pasadena, California 91107-3840
(323) 638-7364
jenniferwang103@gmail.com

Attorneys for Defendant
BOWEN HU

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BOWEN HU (#2), <br><br> Defendant. | **Case No. 20-CR-00621-AB-2** <br><br> **DEFENDANT BOWEN HU'S SENTENCING MEMORANDUM; DECLARATION OF JANET E. HONG; EXHIBITS** <br><br> Hearing Date: March 26, 2024 <br> Time: 10:00 a.m. <br> Courtroom: 7B <br> Judge: Honorable Andre Birotte, Jr. |

Defendant BOWEN HU, by and through his attorneys of record Janet E. Hong and Jennifer Ng, hereby presents this Sentencing Memorandum.

The Sentencing Memorandum is based upon the attached Memorandum of Points and Authorities, Declaration of Janet E. Hong, the Exhibits attached hereto, the

Presentence Investigation Report (PSR) filed by the United States Probation Office, the files and records in this case, and on such other evidence as may be adduced at the hearing of the matter.

Dated: March 18, 2024                              Respectfully Submitted,


    /S/    *Janet E. Hong*
JANET E. HONG
Attorney for Defendant
BOWEN HU


*/S/     Jennifer Ng*
JENNIFER NG
Attorney for Defendant
BOWEN HU

DEFENDANT BOWEN HU'S SENTENCING MEMORANDUM

# TABLE OF CONTENTS

I.       INTRODUCTION. ...........................................................................................1

II.      SENTENCING GUIDELINES CALCULATION. .................................................1

         A.     Loss Amount. ......................................................................................1

         B.     Hu Was Not an Organizer, Leader, Manager, or Supervisor. ........................3

         C.     Hu Was Not in the Business of Laundering Funds. ....................................5

         D.     Hu was Not Engaged in Sophisticated Money Laundering. ........................6

         E.     Hu is Entitled to a Two-Level Decrease as a Zero Point Offender. .............6

III.     18 U.S.C. §3553 SENTENCING FACTORS. ......................................................6

         A.     Nature of Offense. ...............................................................................6

         B.     History and Characteristics. ...................................................................7

               1.     Background ................................................................................7

               2.     Character ...................................................................................8

          C.     Rehabilitation .....................................................................................9

          D.     Need to Avoid Unwarranted Sentencing Disparity.....................................10

IV.    CONCLUSION..............................................................................................10

DEFENDANT BOWEN HU'S SENTENCING MEMORANDUM

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION.

Hu objects to the United States Probation Office's ("USPO") calculation of his total offense level and seeks a further downward variance from that recommended. Specifically, Hu objects to the USPO's loss calculation of $2.5 million and instead seeks that the Court impose a loss of $57,156.26, which is the loss attributable to Hu. Additionally, Hu objects to the USPO's recommendations of a three-point enhancement for "manager/supervisor role"; a four-point enhancement for "business of money laundering"; and a two-point enhancement for "sophisticated money laundering." Finally, since Hu was not a manager or supervisor, he is entitled to a two-level decrease as a zero-point offender.

The USPO has recommended a sentence of 120 months. Given his lack of criminal history, the need to avoid unwarranted sentencing disparity, and the mitigating circumstances presented below, Hu asks this Court for a sentence of 30 months.

## II.   SENTENCING GUIDELINES CALCULATION.

Based on the 2023 Guidelines Manual, the USPO adopted a base offense level of 8 plus a 16-level increase based on the estimated $2.5 million loss amount as determined by the Loss Table in USSG §2B1.1. Probation also added a four-level increase for being in the business of laundering funds pursuant to USSG §2S1.1(2)(C) and a two-level increase for sophisticated laundering under USSG §2S1.1(b)(3). Probation further determined a three-level increase for being a manager or supervisor under USSG §3B1.1(b). This results in a total offense level of 33. With no prior record and a criminal history category of I, Probation states that the applicable Guidelines range is 135 to 168 months. Hu objects to this determination as explained below.

### A. Loss Amount.

The USPO has determined that the loss amount is approximately $2.5 million. Pursuant to §2B1.1(b)(1)(I), a 16-level increase applies because the loss was more than

1   $1.5 million but less than $3.5 million.  This results in a base offense level of 24.

2   Presentence Investigation Report ("PSR") ¶¶42-45.

3       In discussions with the government, defense counsel was informed that the $2.5

4   million estimated loss was based on a sampling taken from a Wechat thread that

5   included Bowen Hu and at least 13 other individuals.  Declaration of Janet E. Hong,

6   ("Hong Decl."), ¶2. The government identified at least 5,000 gift card numbers valued

7   at $500 totaling $2.5 million.  Hu does not challenge that there were at least 5,000

8   different gift card numbers in the chat thread. However, Hu contends that the

9   government has not sufficiently demonstrated that the gift cards were all valued at or

10   above $500, the gift card transactions actually occurred, or that all 5,000 gift cards

11   were derived through fraudulent means.  Therefore, Hu objects to the total loss amount

12   of $2.5 million.

13       Furthermore, the loss calculation under this section has a disproportionate

14   impact on sentencing. Sentencing enhancements that have a "disproportionate impact"

15   on sentencing must be proven by clear and convincing evidence.  *U.S. v. Jordan*, 256

16   F. 3d 922, 927-928 (9th Cir. 2001).  Hu's conduct in this case does not warrant a

17   sentence in the double digits nor anywhere close to the 135 to 168 months Guidelines

18   range as determined by the USPO.  Therefore, the clear and convincing evidence

19   standard applies and the government has not proven the $2.5 million loss amount by

20   this standard.

21       The government has indicated that Hu must pay restitution in the amount of

22   $57,156.26 to 57 victims. Hu does not contest this amount of restitution nor the

23   number of victims and asks this Court to use this as the loss amount in determining

24   sentencing. Per the loss table in USSG §2B1.1(b)(D), Hu is subject to a six-level

25   increase for a loss amount of more than $40,000 but less than $95,000.  Therefore, his

26   base offense level should be 14, not 24.

27   ///

28   ///

**B. Hu Was Not an Organizer, Leader, Manager, or Supervisor.**

The court must find by a preponderance that Hu was a manager or supervisor in the conspiracy in order to justify this upward departure. *See United States v. Wilson,* 900 F.2d 1350, 1354 (9th Cir. 1990) (circumstances justifying upward departure must be proven by preponderance of the evidence). The commentary to § 3B1.1 suggests that the following factors be considered in deciding whether to enhance a defendant's offense level:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment, n.3. *See United States v. Ramos,* 932 F.2d 611, 618 n.14 (7th Cir. 1991) (stating that these factors are relevant to determine whether a defendant qualifies as a supervisor at all).

The facts do not support a three-point leadership enhancement. Hu did not play a meaningful role in managing or overseeing the money laundering scheme. *See United States v. Colon,* 919 F.3d 510 (7th Cir. 2019) (finding that leadership enhancements were not warranted – when defendant purchased kilogram quantities of cocaine and heroin, directed couriers on how and where to make their deliveries, requested couriers to drive him to residence of local dealer to deliver drugs, and instructed couriers to place drugs inside one of the appliances at Defendant's furniture store – because there was no evidence that the courier was required to comply or that Defendant exercised ongoing supervision over the courier). In Hu's case, the money laundering scheme was in existence and well-established long before Hu's involvement. Bai introduced Hu to the business (Exhibit 501) and provided instruction on how to buy merchandise from multiple stores everyday (Exhibit 210). Bai instructed Hu to buy cards directly from Magic Lamp. Bai financed and managed Hu's involvement; he negotiated and settled financial accounts on behalf of Hu with Magic Lamp.

1   Moreover, Bai claimed a large share of the profits from the scheme. After

2   receiving the Target goods, Bai would pay his buyers a percentage of what they

3   bought, and subsequently sell the items. Evidence at trial showed that when law

4   enforcement searched Bai's properties, they recovered tens of thousands of dollars in

5   cash scattered around the property. (Exhibit 161).  Special Agent Cutaia testified that

6   when he searched Bai's accounts, he found invoices documenting the sale of millions

7   of dollars of high-value electronics. Hong Decl., ¶3.  There was no indication that Hu

8   sold anywhere near the same value of merchandise.  There is no evidence Hu amassed

9   profits even close to that in which Bai dealt. In fact, his private conversations with Mr.

10  Shi indicated quite the opposite – their involvement did not make them "super

11  wealthy" and was enough only to "satisfy… [their] basic needs." (Exhibit 26). Unlike

12  Bai, there were no photos showing drawers stuffed with cash and no bank account

13  records revealing Hu had demanded or received a "larger share of the fruits of the

14  crime."

15  Hu further did not exercise control and authority over others. Yan Fu was

16  already working as a runner for other individuals such as "Get LAX" months before

17  she began working with Hu. (Exhibits 4, 5).  Yan Fu knew how the system worked and

18  already understood that cards had different time limits; in this context, Hu was not

19  teaching or instructing Yan Fu nor Second Sister to spend the fast cards in a certain

20  amount of time but rather passing on information about which she'd asked. (See

21  Exhibit 12 at p. 2 (Yan Fu asked Hu, "How long to spend them?" to which Hu replied,

22  "Half an hour.")) Yan Fu was well-trained in the system, as she had been buying

23  Target goods with others before working with Hu, and she did not need advisement or

24  instruction from Hu. Furthermore, Hu's lack of control and authority over others is

25  apparent in his private exchange with unindicted coconspirator "4" after Yan Fu's

26  arrest resulted in the seizure and confiscation of goods. "4" berated Hu for failing to

27  pay "4" back and demanded the return of the money. Hong Decl., ¶4, Ex. A.

28

Hu was not a manager or supervisor in this scheme.  Bai, by contrast, was the central figure in coordinating everything from recruitment of new participants, selling the merchandise, and gaining the lion's share of profit. As such, the aggravating role enhancement is not warranted as to Hu, who received very little profit as a result of his involvement, did not advise or recruit participants who were not already participating before his own involvement started, and lacked authority and control.

## C. Hu Was Not in the Business of Laundering Funds.

The USPO mistakenly determined that Hu qualifies for a four-level increase for being in the business of laundering funds pursuant to USSG §2S1.1(2)(C).  (PSR ¶46).

Application Note 4 indicates that some of the factors to consider are whether the defendant regularly engaged in laundering funds and whether it was for an extended period of time; whether the defendant engaged in laundering funds from multiple sources; whether defendant generated a substantial amount of revenue in return for laundering funds; whether the defendant had a prior conviction related to laundering funds; whether defendant made admissions of his conduct during an undercover government investigation.  USSG §2S1.1 Application Note 4.

Hu's participation in the conspiracy was not for an extended period of time. Unlike Bai, who had been running this scheme for at least a year before Hu got involved, Hu's participation in the Magic Lamp message thread in which Defendants received the majority of the Target gift cards lasted approximately 12 months (from November 2019 to November 2020).  Nor did Hu launder funds from multiple sources – the gift card numbers came from Bai and then Magic Lamp.  There is no indication that Hu profited thousands and thousands of dollars from these transactions, and certainly no such amount was ever discussed or proven at trial. Moreover, Hu has no prior convictions and never made any incriminating statements to an undercover officer regarding his conduct.

1   Given the totality of circumstances, Hu asserts that he does not meet the criteria

2   for being in the business of laundering funds. Therefore, the four-level increase should

3   not apply.

4   **D. Hu was Not Engaged in Sophisticated Money Laundering.**

5   The USPO also applied a two-level increase for being involved in sophisticated

6   money laundering under USSG §2S1.1(b)(3) (PSR ¶50).  Hu objects to this two-level

7   increase.

8   Application Note 5A states that sophisticated laundering means "complex or

9   intricate offense conduct pertaining to the execution or concealment of the money

10   laundering offense. USSG §2S1.1 Application Note 5.  Sophisticated laundering

11   typically involves the use of fictitious entities, shell corporations, two or more levels or

12   layering of transactions, transportation, transfers, or transmissions of the criminally

13   derived funds or offshore financial accounts.  Here, Hu was not associated with any

14   fictitious entities, shell corporations, nor offshore financial accounts.   Therefore, this

15   enhancement should not apply.

16   **E. Hu is Entitled to a Two-Level Decrease as a Zero Point Offender.**

17   Because Hu did not play an aggravating role in the offense, he should be entitled

18   to a two-level decrease as a zero-point offender pursuant to USSG §4C1.1.  If the

19   Court finds a total loss amount of $2.5 million, that Hu was in the business of

20   laundering funds, and that the conspiracy involved sophisticated laundering, the

21   offense level would be at 30.  If the Court agreed that Hu should not receive a three-

22   level increase for aggravating role, he would then receive a two-level decrease as a

23   zero-point offender and total offense level would be 28. With a criminal history

24   category of I, the applicable Guidelines range is 78 to 97 months.

25   **III.    18 U.S.C. §3553 SENTENCING FACTORS.**

26   **A. Nature of Offense.**

27   Probation's claim that Hu has not clearly demonstrated acceptance of

28   responsibility for his actions is not based on anything other than the lack of a plea

agreement and the inability of Probation to ask him questions regarding his conduct based on defense counsel's request not to.  On the contrary, Hu takes full responsibility for his actions in this case.

As stated above, there is little evidence to suggest that Hu was a manager, leader, or supervisor in the conspiracy that would warrant a three-level increase for playing an aggravating role. The government argues that Hu eventually rose up in the "hierarchy" of the conspiracy, yet fails to provide evidence to support that Hu was somehow above the 13 other individuals on the Wechat thread from which they derive the estimated loss of $2.5 million.  Arguably, all Magic Lamp and other unindicted co-conspirators on this thread took a greater leadership role in that they knew where the gift card numbers were coming from and transmitting those to Hu and Shi and directing Hu and Shi on how to use them.

**B. History and Characteristics.**

**1. Background**

Bowen Hu is 28 years old. He was born and raised in Dalian, China where his parents still live. (PSR ¶76-77).   Hu was a child prodigy in piano.  He began taking lessons at age five and within seven years he had completed all ten stages of certification to become a professional pianist.  (PSR ¶79).  He received several honors and recognition for his achievements in piano. Hong Decl. ¶5 Ex. B.

While living in Dailan as a teenager, Hu regularly volunteered to serve the community.  He cleaned rooms at the Hongquia Community Residents Community, a senior citizen home, and was even recognized as an "Excellent Volunteer" for his volunteer work there.  *Id*., ¶6, Ex.C, pp. 1-4. He also received a volunteer service certificate by the Chinese Young Volunteers Association, a volunteer service certificate for completing 100 hours in the community environmental protection volunteer service and a Volunteer Teaching Certificate from Dalian Art School for teaching piano.  *Id.* at pp. 8, 11-12, 15,

Hu attended primary, middle school, and high school in Dailan, China.  *Id.,* Ex. D.  In 2013, at the age of 18, he moved to California to attend California State

Fullerton to major in music.  (PSR ¶80).  Although he did not finish college, he began to make his own music under the stage name of "Eastwen."  He was successful at creating music and even had two offers from different music companies – FreeMusicWave and Top Phonic Recordings. Hong Decl., ¶8, Ex.E.

**2.  Character**

Despite the charges in the instant matter, by all accounts including letters from close friends and family, Bowen Hu is a decent, generous, and caring person at his core.

Joshua Kelvin Cumming expresses deep admiration for Hu, "whose kindness and compassion has left an indelible mark" on his life. *Id*., ¶9, Ex. F. at p.1.   Hu was the caretaker for Cumming and his wife's son and always approached his role with tenderness and empathy.

Richard Yu, who has known Hu for over 12 years, states that Hu's willingness to help others is undeniable.  He says that Hu is a good person who deserves a second chance. *Id.* at p. 2.

Derek Mingtao Yu, who has known Hu for nine years, indicates that Hu is a kind person who is generous with his friends and is a lover of animals. *Id.* at p. 3. They share the same interest in gardening and plant care.  Hu often helped Yu early in the morning to plow the land.  *Id.*

Li (Angel) Jun Yang states that Hu "embodies the essence of compassion, generosity, and genuine kindness."  *Id*. at p. 4.  Like others, she mentions Hu's unwavering dedication to helping those in need, including helping with childcare for her two-year old son.  *Id.*  "Reliability and trustworthiness are hallmarks of Bowen's character." She describes him as "selfless" and expressed her admiration for his dedication to helping the homeless. *Id.*

Zhiong "Terry" Li, the uncle of Hu, states that despite Hu's poor judgment, he is a caring and respectful person.  He notes Hu's volunteer efforts in preparing food for the homeless and playing music for the local church.  *Id.* at p. 5.

Melissa Yang, a good friend of Hu for over ten years, indicates that she witnessed Hu's great passion for electronic music production. *Id.* at p. 6. Hu's works under the artist's name "Eastwen," earned him the attention of several major recording label companies. She expresses her willingness to help Hu integrate back into society once he is finished serving his sentence. *Id.*

Nicole Xin Tong, a close friend of Hu, states that Hu was like a little brother to her. *Id.*, p. 8. She states that he has a kind heart and cares deeply for his family and friends, and also helps her care for her mother. *Id.*

Lawrence Hung, a good friend of Hu, discusses Bowen's virtues of compassion, generosity, and sincere kindness. *Id.* at p. 9. "Reliability and trustworthiness are integral aspects of Bowen's character." *Id.*

Weixiu Liu, Hu's mother, states that as a child, Hu was always willing to help those in need and often engaged in charity work, especially environmental conservation activities. *Id.* at pp. 10-12.   She also indicates that Hu expressed to her his profound remorse for his actions in this case. *Id.*

Hu Di, Hu's father, indicates that Hu has always been a kind-hearted and compassionate person. *Id.* at pp. 13-15. Hu always had a fondness for animals as well, taking in stray dogs and insisting that they be able to stay. *Id.* Hu Di also states that Hu's family is ready to provide the love, support, and proper guidance to help him reintegrate back into society. *Id.*

## C. Rehabilitation

While out of custody on bond, Hu made significant efforts to rehabilitate himself and give back to the community. He helped serve lunch at the Union Rescue Mission in 2022. *Id.* at ¶6, Ex. C at , p. 16.   Last year helped assemble food packages at the Los Angeles Regional Food Bank from February 3, 2023 to August 9, 2023. *Id.* at p. 17.

///

///

**D. Need to Avoid Unwarranted Sentencing Disparity.**

On January 30, 2023, Yan Fu was sentenced to 20 months in prison, two years of supervised release, and restitution in the amount of $48,073.93.  (PSR ¶9).

In light of the sentence of his co-defendant, Hu asks this Court to sentence him to 30 months in order to avoid unwarranted sentencing disparity.

**IV.    CONCLUSION.**

Bowen Hu's talents, generous spirit, willingness to help others in need and expansive support from friends and family make it highly likely that this case will be his last.  Since his arrest, Hu has stayed out of trouble and has used his time for far better pursuits by helping the homeless – a continuation of the acts of service he engaged in as a teenager in China.  Hu respectfully submits that a sentence of 30 months with a three-year term of supervised release is punishment sufficient, but not greater than necessary, to address the offense.

Dated: March 18, 2024                                        Respectfully Submitted,


                                                                       _/S/    Janet E. Hong_____
                                                                        JANET E. HONG
                                                                        Attorney for Defendant
                                                                        BOWEN HU


                                                                        _/S/    Jennifer Ng_____
                                                                        JENNIFER NG
                                                                        Attorney for Defendant
                                                                        BOWEN HU

**DECLARATION OF JANET E. HONG**

I, Janet E. Hong, declare as follows:

1. I am an attorney licensed to practice law in the State of California and the Central District of California. I have been appointed to represented defendant BOWEN HU pursuant to the Criminal Justice Act.

2.      In discussions with the government, I learned that the $2.5 million total loss amount was derived from a sampling of a Magic Lamp thread on Wechat that had 14 individuals in the group chat including "4" and Hu.  The government identified at least 5,000 gift card numbers valued at approximately $500 totaling $2.5 million.

3.      At trial, Special Agent Cutaia testified that when he searched Bai's accounts, he found invoices documenting the sale of millions of dollars of high-value electronics.

4.      After Yan Fu's arrest and subsequent confiscation of the goods, "4" berated Hu for failing to pay "4" back and demanded the return of the money.  This exchange can be found in the discovery provided by the government, at USAO-CPB000008645.  A true and correct copy of relevant portions of this Wechat exchange Excerpt of WeChat Communication Between "4" and Hu is attached hereto and incorporated herein as Exhibit A.

5.      I received several music certificates from Melissa Liang, Hu's longtime friend. A true and correct copy of these certificates are attached hereto and incorporated herein as Exhibit B.

6.      I received documents related to Hu's volunteer work from Melissa Liang. A true and correct copy of these documents are attached hereto and incorporated herein as Exhibit C.

7.      I received documents related to Hu's education and schooling from Melissa Liang. A true and correct copy of these documents are attached hereto and incorporated herein as Exhibit D.

8.      I received documents related to Hu's offers from record companies from Melissa Liang. A true and correct copy of these documents are attached hereto and incorporated herein as Exhibit E.

9.      I received several letters of support from Hu's close friends and family from Melissa Liang. A true and correct copy of these letters are attached hereto and incorporated herein as Exhibit F.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 18th Day of March, 2024, at Los Angeles, California.


*/S/ Janet E. Hong*

JANET E. HONG

DEFENDANT BOWEN HU'S SENTENCING MEMORANDUM